UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x            Index No.
MYKOLA IVANENKO, LARYSA IVANENKO
 "LUXEXPRESS-II" CORP.,                             **COMPLAINT**
                Plaintiff,
     -v-
VIKTOR YANUKOVICH, ALEXANDER YANUKOVICH, VIKTOR YANUKOVICH, JR., MYKOLA AZAROV, ALEXEY AZAROV, YURY ANISTRATENKO, VALERIY KHOROSHKOVSKIY, ANDREW KLYUYEV, SERGEY KLYUYEV, VITALIY ZAKHARCHENKO, VIKTOR PSHONKA, ARTEM PSHONKA, RENAT KUZMIN, ANATOLIY MELNIK, VLADIMIR GOGOL, OLENA LUKASH, VICTOR TATKOV, ARTUR EMELYANOV, BORIS KOLESNIKOV, VLADIMIR KOZAK, ALEXEY KRYVOPISHIN, ALEXSANDER RYBAK, ALEXANDER POPOV, ANATOLIY GOLUBCHENKO, GALINA GEREGA, LEONID CHERNOVETSKIY, SERGEY KURCHENKO, ARSENY YATSENYK, VIKTOR SHOKIN, BORIS OSTAPYUK and JOHN DOES 1 through 20,
                Defendants.
_____x

Plaintiffs MYKOLA IVANENKO, LARYSA IVANENKO and LUXEXPRESS-II, LLC, by and through their undersigned counsel, for their Complaint against the above-cptioned defendants, allege as follows:

**PARTIES**

1.     Plaintiff MYKOLA IVANENKO, a Ukraine national, is the Executive Director of plaintiff Luxexpress-II, LLC, and the husband of plaintiff Larysa Ivanenko, the sole owner of Luxexpress II, LLC. He currently resides in New York, and is seeking political asylum in the U.S.

2.     Plaintiff LARYSA IVANENKO, a Ukraine citizen and owner of Luxexpress-II, LLC, currently resides in New York with her husband, Mykola, and two children, and is also seeking a political asylum and U.S. citizenship.

3.     Prior to its destruction by defendants in 2012, plaintiff LUXEXPRESS-II" LLC (hereinafter either "Luxexpress-II" or "the Company") was a company based in Kiev, Ukraine

that primarily imported U.S. manufactured automobiles into Ukraine for sale there. In addition, plaintiff Luxexpress became the official dealer for retail sale and service maintenance for "Honda", "Nissan" and "KIA" cars.

4. Plaintiff Luxexpress-II was located on one of the most prestigious and valuable plots of land in Kyiv, at 1 Prytchalna St., which is on the bank of the Dnieper River in Kiev. Under the leadership of plaintiffs Mykola and Larysa Ivanenko , Luxexpress-II was engaged in various land development projects, including a proposed Marriott hotel complex, which would have included a business and trade center, plus a large parking garage. The proposed total area of the hotel, business center and trade center complex was 174,590 square meters.

5. Defendant VIKTOR YANUKOVICH is the former President of Ukraine.

6. Defendant ALEXANDERl YANUKOVICH is the son of former President of Ukraine, and General Director of the company known as "Holding Mako."

7. Defendant VIKTOR YANUKOVICH, JR., the son of former President of Ukraine, was a member of the Ukraine Parliament.

8. Defendant MYKOLA AZAROV is the former Prime Minister of Ukraine.

9. Defendant ALEXEY AZAROV, the son of the former Prime Minister of Ukraine, was a member of the Ukraine Parliament.

10. Defendant YURY ANISTRATENKO is the First Deputy Head of the Cabinet of Ministers of Ukraine.

11. Defendant VALERIY KHOROSHKOVSKIY is the former First Vice Prime Minister of Ukraine.

12. Defendant ANDREY KLYUYEV is the former Secretary of the National Security and Defense Council of Ukraine.

13. Defendant SERGEY KLYUYEV is the brother of Andrey Klyuyev, and is a member of the Ukraine Parliament.

14. Defendant VITALIY ZAKHARCHENKO is the former Minister of Internal Affairs of Ukraine.

15. Defendant VIKTOR PSHONKA is the former Prosecutor General of Ukraine.

16. Defendant ARTEM PSHONKA, the son of the former Prosecutor General of Ukraine, is a member of the Ukraine Parliament.

17. Defendant RENAT KUZMIN is the former Deputy Prosecutor General of Ukraine.

18. Defendant VICTOR ZANFIROV is the former Deputy Prosecutor General of Ukraine.

19. Defendant ANATOLIY MELNIK is the former Prosecutor of Kyiv.

20. Defendant VLADIMIR GOGOL is the Deputy Prosecutor of Kyiv.

21. Defendant OLENA LUKASH is the former Minister of Justice of Ukraine.

22. Defendant VICTOR TATKOV is the former Chairman of the Supreme Economic Court of Ukraine.

23. Defendant ARTUR EMELYANOV is the former Chairman of the Economic Court of Kyiv.

24. Defendant BORIS KOLESNIKOV, the former Minister of Infrastructure of Ukraine, is a member of the Ukraine Parliament.

25. Defendant VLADIMIR KOZAK is the former Director General of Railways.

26. Defendant ALEXEY KRYVOPISHIN is the principal executive of the South Western Railway.

27. Defendant ALEXSANDER RYBAK is the former Chairman of the State Board of Architectural Construction and Inspection of Ukraine.

28. Defendant ALEXANDER POPOV is the former Chief of the Kyiv City State Administration.

29. Defendant ANATOLIY GOLUBCHENKO is the former Deputy Chief of the Kyiv City State Administration.

30. Defendant GALINA GEREGA is the former Deputy Mayor of Kyiv, and a former Cabinet Secretary.

3

31. Defendant LEONID CHERNOVETSKIY is the former Chief of the Kyiv City State Administration.

32. Defendant SERGEY KURCHENKO is a Ukrainian businessman and owner of the company known as VETEK (East European Energy Company).

33. Defendant ARSENY YATSENYK is the current Prime Minister of Ukraine and, as such, is a representative of the current executive branch and administration of Ukraine, which is the successor-in interest to the former Yanukovich administration that was responsible for the expropriation of plaintiffs' business and property without just compensation.

34. Defendant VIKTOR SHOKIN is the current General Prosecutor of Ukraine, and, as such, is a representative of the current executive branch and administration of Ukraine, which is the successor-in-interest to the former Yanukovich administration that was responsible for the expropriation of plaintiffs' business and property without just compensation.

35. Defendant BORIS OSTAPYUK is the current General Director of the State Administration of the Railway Transport of Ukraine (Ukrzaliznytsia) and, as such, is the officer currently responsible for providing just compensation to the plaintiffs for the expropriation of their business and property.

## JURISDICTION AND VENUE

36. This Court has personal jurisdiction over all defendants by virtue of the fact that their acts of racketeering and/or other tortious activities have had a direct impact on business and other activities in New York, or by operation of Fed. R. Civ. P. 4(k) (1-2).

37. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 18 U.S.C. § 1964(c) (RICO). Plaintiffs allege that Defendants conducted multiple racketeering activities that had a continuity of structure and purpose over an extended period of time.  RICO provides federal jurisdiction for persons "injured in [their] business or property" by acts taken pursuant to a racketeering "enterprise."  18 U.S.C. § 1964(c).

38.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims brought under the laws of the State of New York.

39.     Venue properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) and (c). Furthermore, there is no foreign independent or impartial forum in which to bring this action.

## RELEVANT FACTS

40.     Plaintiffs MykolaI and Larysa Ivanenko founded Luxexpress-II in 1993. According to two Ordinances, dated Nobember 11, 1994 (No. 506) and November 22, 1995 (No. 494), Luxexpress-II was permitted to use the plot of land comprising 7844 square meters located at 1 Prytchalna Street in Kharkivskyi district in the City of Kyiv up until December 31, 1997. See **Exhibits 1** and **2** attached hereto.

41.     On or about January 11, 1996, Luxexpress-II began operation of a micro-market at its Prytchalna Street location, which comprised a single-line store for building supplies, a cafe, a warehouse and a parking lot. *See* Acceptance Commission Certificate No 175, attached hereto as **Exhibit 3**.

42.     During 1998, Luxexpress- II signed two long-term land tenure agreements for the plot of land at Prytchalna Street

43.     Under the first agreement (No. 90-5-00035), dated February 19, 1998, Luxexpress-II leased 0.5994 hectares of land for a 10 years period, which contract was extended until 2018. *See* **Exhibit 4** attached hereto.

44.     Under the second agreement (No. 90-5-00034), also dated February 19, 1998, Luxexpress-II leased 1.6184 hectares of land for a term of 49 years, until 2047. *See* **Exhibit 5** attached hereto.

45.     From 1998 through 2006, the Company developed into a versatile car retail dealer of various U.S. manufactured automobiles, as well as for Honda, Nissan and KIA vehicles.

46.     One of the U.S.-based companies that Luxexpress-II worked closely with on the importation and sale of American cars was the Alamo Group.

47.     By 2000, Luxexpress-II completed construction of a diversified car service center, specializing in retail sales and service maintenance, as well as the continued importation of American cars. In connection with that business, it held several commercial patents, trade permits and other permits as required.

48.     Luxexpress-II continued to conduct business for 18 years, from 1994 until July, 2012. According to data collected by the Organizing Committee of the National Business Rating, and in accordance with information collected by the State Statistics Committee of Ukraine, the Company was among the leaders in the industry, taking second place in the following categories: Sales Results, Profits, Labor productivity, and Payroll.  It was also rated as being in fourth place in the Retail Car Trade industry. At its height, the Company had a payroll of 200 people. *See* **Exhibit 6** attached hereto.

49.     On December 10, 2003, the Cabinet of Ministers of Ukraine issued Ordinance No 755, relating to "the construction of the road and railway bridge across the Dnieper River in the city [of] Kiev on the railway section Kyiv – Moscowsky – Darnytsya" according to which the Customer's functions are borne by the State Territorial – Sectoral Association (STSA) 'South-Western Railway' (Pivdenno-Zakhidna Zaliznytsya) (hereinafter referred to as "the road/railway bridge" or "the Project." Pursuant to this Ordinance, the land leased by Luxexpress-II was included in the road/railway bridge construction zone.

50.     Ordinance No. 755, which was signed by Viktor Yanukovych, the Prime Minister of Ukraine at that time, directed the Kyiv City Council to amend the General Plot Plan for the City until 2020, in order to incorporate the plans for the road/ railway bridge. *See* **Exhibit 7** attached hereto.

51.     STSA South-Western Railway sent a letter to Luxexpress-II (No. 119-НГ-311), dated February 17, 2004, which was signed by the Chief Engineer, V.G. Tyagulskyi, which proposed an agreement on the precise location of the land needed for the road/railway bridge project. *See*

6

**Exhibit 8** attached hereto. The letter proposed an agreement on the precise location of the land needed for the road/railway bridge project.

52.     On or about April 15, 2004, Luxexpress-II received another letter (No. НЗП-6-153), signed by the Deputy Chief of the Railway, R.M. Yosyfovych, which identified that portion of the Company's land which would be used in conjunction with the construction of the road/railway bridge, and proposing that a calculation be performed with regard to the amount of losses to be reimbursed to the Company. *See* **Exhibit 9** attached hereto.

53.     On or about December 19, 2005, Luxexpress- II received a third letter from STSA South-Western Railway (No. НГ-13-676), signed by Chief Engineer Tyahulskyi, again noting that part of the Company's property was being seized as in accordance with the general construction plan. *See* **Exhibit 10** attached hereto.

54.     On March 14, 2004, the Company also received a letter from the Board of Directors of the STSA South-Western Railway (No.H-6388), signed by Deputy Chief A.O. Dobrovolskyi, which proposed an agreement regarding the conditions under which the building containing the varnish and paint shop would be relocated out of the construction area. *See* **Exhibit 11** attached hereto.

55.     On March 15, 2006, in a letter (No 2/59-6/155) from Ukrzaliznytsya (the Ukrainian Railway) to Luxexpress- II, signed by the Acting Deputy General Director, I.O. Kudenko, it is noted: "To resolve the question of reimbursement of losses to Luxexpress- II connected with the construction of bridge across the Dnieper River, [a] Working group was created within STSA South-Western Railway." *See* **Exhibit 12** attached hereto.

56.     In 2006, Luxexpress-II experienced a sharp decline in business relating to the construction of the bridge and the land-use issues under discussion.

57.     On May 18, 2006, the Shevchenko district court of Kyiv decided a case involving the Company (Case No. 2-4501/06) , holding that construction of the bridge across the Dnieper River was damaging Luxexpress – II's business operations. Among other things, the court found

that Luxexpress-II incurred substantial business losses, including the loss of its ability to use its leased property. The court also found that the Company had lost the prospect for any further business development of the property, including the loss of future business profits. In its conclusion, the court ordered the South Western Railway to compensate the Company for all of its material losses. *See* **Exhibit 13** attached hereto.

58. By Decision of the Court of Appeals of the City of Kyiv, dated August 15, 2006, the decision of the lower court was affirmed. *See* **Exhibit 14** attached hereto.

59. On December 27, 2006, the Supreme Court of Ukraine reversed the holdings by the lower courts on jurisdictional grounds, noting as follows:

> Given that the actual dispute arose between legal persons: "Luxexpress-II" LLC and the Railway, which according to Art.1, 12 of the Civil Code of Ukraine and Art.15 of the Civil Code of Ukraine is not related to civil jurisdiction and subject to review by the economic court, judicial decisions are to be cancelled with full closure of case proceedings in accordance with paragraph 1 of Art.205 of the Civil Code of Ukraine on the grounds provided for by part 1 of Article.340 of the Civil Code of Ukraine.

*See* **Exhibit 15** attached hereto.

60. Based upon the calculations of the Central Service of Ukrainian State Investment Expertise (No 189-2), dated August 18, 2006, and in accordance with a letter, dated April 4, 2007 (No 06-374), issued by the Institute of Kyivdiprotrans, the total amount of the compensation due Luxexpress-II related to the transfer of its property to STSA South–Western Railways was estimated to be 100 000 000 UAH, and, in addition, the Company's estimated damages for all other costs and losses was approximately 100 000 000 UAH (approximately $35-36 million U.S. dollars). *See* **Exhibit 16** attached hereto.

61. These estimates of the Company's losses were confirmed by a letter (No. 59/1890) from Deputy Chief of Shevchenkyvskyi District Administration of the Head Administration of the Ministry of Internal Affairs of Ukraine in the city of Kiev, dated February 3, 2012, stating:

> During the audit it was found that according to the draft summary of costs and estimated cumulated payments as of 04.04.2007 [April 4, 2007] No 06-374 it appears that for [the] solution of the property issues with Luxexpress- II, STSA South-Western Railway scheduled to pay the Company's losses in the amount of 100 000 000 UAH, of a general estimate value and 100 000 000 UAH of other costs. [As of today] the money funds were spent by the STSA South-Western Railway officers for needs other than the target purpose. Taking into account all above mentioned actions of the STSA South-Western Railway are considered to have elements of a crime under Art. 364 of the Criminal Code of Ukraine.

*See* **Exhibit 17** attached hereto.

62.     The necessity of seizing the Company's property was further confirmed by a letter dated October 8, 2009 from the Institute Kyivdormistproekt (No. 121/ДП-КАМП), stating: *"*This project [was] developed and agreed with the State Enterprise Institute of General Plot Plan of Kyiv (Kyivproekt" PJSC) and allows for partial use of Luxexpress-II land plots on which the buildings are located." *See* **Exhibit 18** attached hereto.

63.     Further proof that the bridge construction zone included the buildings and property of Luxexpress-II is set forth in a letter dated October 9, 2009 from the Director of the Kyiv General Plot Plan Institute (No. 332), stating:

> Planning solution for the traffic junction is developed by the institute "Kyivdormostproekt" and agreed by the State Enterprise " Kyiv General Plot Plan Institute" as a part of the project "road and railway bridge across the Dnieper River in Kiev (with access lanes) on the railway section "Kyiv – Moscowskyi – Darnytsya" and it provides for a partial use of the land plot with the demolition of "Luxexpress-II" LLC buildings.

*See* **Exhibit 19** attached hereto.

64.     Also, according to a letter from the Administration of Urban Planning, Architecture and Urban Environment Design (No 07-11100), dated October 26, 2009, at the time that the bridge construction project was approved, STSA South-Western Railway was directed to draw the land use documents in the following prescribed manner:

> The approval shall become effective upon resolution in accordance with established procedure under the current law on property and legal matters (including those with Luxexpress-II).

*See* **Exhibit 20** attached hereto.

65.     For a substantial time period, Luxexpress-II cooperated with the U.S. Commercial Service, which was part of the U.S. Embassy in Ukraine. Around 2007, U.S. Commercial Specialist Oleksandr (Alexander) Zavgorodniy organized a meeting during which he introduced plaintiff Mykola Ivanenko to U.S. citizen and businessman Dana Anderson ("Anderson"), who owned a construction company based in the U.S.

9

66. After this, plaintiff Mykola Ivanenko started developing commercial relations with Anderson, including, among other things, a Harley-Davidson ("HD") motorcycle dealership on the Company's property. Later, on February 10, 2009, plaintiff Mykola Ivanenko and Anderson met David Hackshall, regional manager of "HD" for Europe. Hackshall and other representatives of HD visited the offices of Luxexpress-II in Kyiv and, after a successful meeting, Mykola Ivanenko and Anderson visited Milwaukee, Wisconsin to have a look at HD's plant and museum there.

67. Plaintiffs developed a business plan to build a Marriott hotel on the Company's property in Kyiv, and in 2007, they retained the architectural firm "Yezhov" to design an architectural plan for the construction of a multifunctional office-hotel complex on the property. *See* **Exhibit 21** attached hereto.

68. In or about 2010, plaintiff Mykola Ivanenko proposed to the Marriott Corporation that it consider supporting the planned hotel complex project in Kyiv, and when Marriott expressed great interest, a Marriott representative was scheduled to come to Kyiv on July 26, 2012 for a meeting. The purpose of the meeting was to view the proposed construction site for two-tower office-hotel complex and exhibition center.

69. However, when Anderson and Ivica Cacic (the Marriott representative) arrived in Kyiv on July 25, 2012, the day before the scheduled meeting, they were shocked to see that the business and buildings of the Company had been totally demolished. The Luxexpress- II building, which occupied approximately 10 000 square meters, were destroyed. According to the value estimate issued by the Right-Bank commodity exchange on October 25, 2012, this one building was valued at $68,326,466.27 in U.S. dollars. *See* **Exhibit 22** attached hereto.

70. On April 22, 2010, the State Land Committee of the City of Kyiv conducted an audit of Luxexpress- II's compliance with the requirements of the Land legislation. On April 22, 2010, it issued a Certificate of Audit Compliance (No A-512/33), certifying that the Company was in compliance with Ukraine land legislation requirements. *See* **Exhibit 23** attached hereto.

71. On August 17, 2011, the Head of State Territorial and Sectoral Association "South Western railway" (Kryvpishyn O.M.) sent a letter to the Chief of Kyiv Municipal State Administration (Oleksandr Popov) containing false information about certain buildings constructed by Luxexpress-II in 2008-2009 after construction of the bridge. See **Exhibit 24** attached hereto.

72. There is definitive aerial photographic evidence, taken on July 29, 2005 from a helicopter, disproving the allegations made against the Company in the August 17, 2011 letter. See photo attached hereto as **Exhibit 25**.

73. On September 13, 2011, the City of Kiev carried out a "landscape control" inspection of the Company's property in order to determine whether it met certain construction standards requirements. The City issued a letter the same day (September 13, 2011), stating that Luxexpress-II was in compliance with all construction standards, and further noted that it was necessary for South-Western Railway to settle certain "property legal issues" with the owner of the building [*i.e.*, Luxexpress-II] "in accordance with the decision [of the] Dniprovskyi District Court [dated October 18, 2004]. *See* **Exhibit 26** attached hereto.

74. On February 22, 2012, the Deputy Prosecutor of Kyiv, M.S.Mohylnytskyito, sent a letter to A. P. Popov, the Head of the Kyiv City State Administration (No. 07/2-9614-12), proposing the creation of a Commission to resolve the property damage claims of the Company; it was further proposed that the Commission would be comprised of representatives of the Kyiv City State Administration, STSA South-Western Railway and Luxexpress-II. *See* **Exhibit 27.**

75. The Company's legal title to the buildings located on the property was never seriously in question, having been recognized by the Ukrainian courts as early as 2004. *See* Decision of Dniprovskyi District Court of the City of Kyiv, dated October 18, 2004, **Exhibit 28** attached hereto. In addition, on March 22, 2012, the Dniprovskyi District Court reiterated its decision that Luxexpress-II was the legitimate holder and occupant of the property. *See* **Exhibit 29.**

11

76. Although defendant Popov, as the head of Kyiv City Administration, was obliged to act in the public interest and agree to the calculations of the Company's losses based upon the objective facts provided to the Commission. Instead, however, Popov engaged in a scheme to defraud plaintiffs, in collusion with various other public officials and other persons, including but not limited to defendants Mykola Azarov (former Prime Minister of Ukraine), Yuriy Anistratenko (former First Deputy Head of the Cabinet of Ministers of Ukraine), Viktor Pshonka (former Prosecutor General of Ukraine), Vitaliy Zakharchenko (Minister of the Interior), Valeriy Khoroshkovskiy (former First Vice Prime Minister of Ukraine), Boris Kolesnikov (former Minister of the Infrastructure), Alexey Kryvopishyn (former Chief of STSA South-Western Railway). These defendants engaged in said scheme to defraud plaintiffs and to deny them just compensation for the destruction of their buildings and property at the direction of defendant Victor Yanukovich, the former President of Ukraine.

77. Evidence of defendants' unlawful scheme to deprive plaintiffs of their business and property without just compensation is reflected in a document signed by the defendant Azarov, in which he reveals his intention to terminate the land plot leases of Luxexpress-II and to destroy plaintiffs' buildings and property. *See* **Exhibit 30** attached hereto. Upon information and belief, this scheme to defraud plaintiffs was part of a larger scheme by the defendants to cover up their embezzlement and misuse of public fund in connection with the construction of the road/rail bridge being constructed adjacent to plaintiffs' property.

78. Further evidence of the defendants' unlawful collusion and racketeering conspiracy is found in a letter, dated February 29, 2012, from defendant Pshonka, the former Prosecutor of Ukraine, to defendant Azarov, reporting on the status of the unlawful efforts by the defendants, working through the State Office of Architectural and Construction Control in the City of Kyiv, to destroy plaintiffs' buildings and take their property without compensation. *See* **Exhibit 31.**

79. Further evidence of the unlawful interference by defendant Azarov and his co-conspirators in the case pending before the Kyiv Economic Court of Appeals (No 01-08/137) is

the letter, dated April 19, 2012, signed by the Head of the Court, A.S. Emelyanov, which confirms that the Court had received instructions from defendant Azarov to terminate the Company's lease contracts and demolish the buildings located on the property. *See* **Exhibit 32.**

80. After publicly releasing information regarding defendants' unlawful actions and racketeering conspiracy, plaintiffs released some of this material to the media, which gave wide coverage to these unlawful activities. Thereafter, plaintiff Mykola Ivanenko repeatedly received threats to his life from persons who, upon information and belief, were associated with the defendants, and especially connected to defendant Vladimir Gogol, the former Deputy Prosecutor of the City of Kyiv.

81. Fearing for their lives and the safety of their family, Plaintiffs Mykola and Larysa Ivanenko left Ukraine with their two children and, on October 17, 2012, sought political asylum in the United States.

82. On or about August 27, 2012, plaintiff Mykola Ivanenko returned to Kyiv to speak at a press conference about the destruction of plaintiffs' business and the unlawful taking of their property.

83. On March 12, 2014, plaintiffs received an expert evaluation of their property and business losses resulting from defendants' racketeering conspiracy and unlawful destruction of their business and property without just compensation, which amounted to $1.458 billion in U.S. dollars. See **Exhibit 33**.[1]

84. On March 13, 2014, plaintiffs addressed a letter to defendant Arseniy Yatsenyuk, the Prime Minister of Ukraine, requesting that the Luxexpress-II settlement agreement be concluded. To date, plaintiffs have not received any response.

85. On March 14, 2014, plaintiffs filed a complaint with the office of the Prosecutor General of Ukraine, and a pre-trial investigation was started on March 16, 2014.

---

[1] A letter dated October 28, 2010 from the Darnyts'koi district in the Kyiv state administration (No. 698) confirms the legitimacy of all of the Company's buildings on the property in that all of the structures were assigned the same postal address: 1, Prytchalna Street, Kyiv. See **Exhibit 34**.

86. On may 16, 2014, plaintiffs received a letter from the Prosecutor General of Ukraine recognizing Luxexpress II as a victim of a crime.

87. However, upon information and belief, defendant Viktor Shokin, the current Prosecutor General, is intentionally delaying consideration of the case and obstructing its successful conclusion.

88. In addition, upon information and belief, it is believed that defendant Boris Ostapynka, the Director General of the Railways, is also improperly applying pressure on the Prosecutor General's Office to delay the conclusion of the investigation and to provide plaintiffs with just compensation for their losses.

## CLAIMS FOR RELIEF

### COUNT I

**(Racketeering Activity in Violation of the Racketeering
Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 *et seq*).**

89. Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as though fully set forth herein.

90. At all times relevant to this Complaint, defendants and their agents and co-conspirators have, as part of the Racketeering Enterprise, conducted, directly and indirectly participated in, and conspired in a pattern of racketeering activity, including mail and wire fraud that took place in New York and elsewhere in the United States, in violation of 18 U.S.C. §§ 1962(c) and (d). Each defendant subscribed to and endorsed the unlawful purposes of the Racketeering Enterprise, and either participated in, facilitated and/or aided and abetted at least two of the predicate acts that had sufficient relatedness and continuity to form a pattern of racketeering activity that continues to the present.

91. Defendants' pattern of racketeering activity included the unlawful actions and activities of defendants and their co-conspirators identified in this Complaint, including but not limited to,

the mailings, faxes and email communications between various international locations, such as New York and Kiev, and New York and elsewhere in the U.S. constituting wire fraud in violation of 18 U.S.C. § 1343, the use of the mails for purposes of mail fraud in violation of 18 U.S.C. § 1341, and unlawful money transfers in violation of 18 U.S.C. § 1956.

92. Since approximately 2007 and continuing to the present, defendants and their agents and co-conspirators have, upon information and belief, invested their racketeering proceeds in various financial investments in New York and elsewhere in the United States, in violation of 18 U.S.C. § 1962(a). These investments have enabled the Racketeering Enterprise to operate under the cover of legitimacy when engaging in their various acts of racketeering.

93. Since approximately 2007 and continuing to the present, defendants and their agents and co-conspirators have also acquired and maintained control of and interests in various companies and enterprises operating in interstate and foreign commerce in New York and elsewhere in the United States, as well as abroad, through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b). Defendants' Racketeering Enterprise involved a complicated web of shell companies, business deals and investment vehicles in the United States, which engaged in interstate commerce and over which the named defendants and their co-conspirators had total dominion and control. These acquisitions and maintenance of interests have enabled defendants to operate under the cover of legitimacy when engaging in their racketeering activities and distributing the unlawful profits of the Racketeering Enterprise.

94. As a direct and proximate result of defendants' violations of 18 U.S.C. §§ 1962(a)-(d), the plaintiffs have been injured in their business and property within the meaning of the civil RICO statute, by among, other things (a) being prevented from pursuing their businesses and/or financial investments by which plaintiffs Mykola and Larysa Ivanenko were able support to support themselves and their family, (b) being deprived of their salaries, income, return on investment and business development opportunities, and from which they would have benefited but for the defendants unlawful seizure and wrongful taking of their property without just

compensation, and the defendants' fabrication of misrepresentations designed to justify said unlawful taking through false representations, among other things, that plaintiffs had "illegally" constructed and operated their business on the subject property, and (c) being forced to pay for legal representation in order to defend themselves against false claims and justifications for the unlawful seizure of their businesses and property.

95. The damages suffered by plaintiffs were reasonably foreseeable, and, in fact, anticipated and intended by defendants as the natural consequence of their acts.

## COUNT II
### (Fraud)

96. Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as though fully set forth herein.

97. Defendants engaged in a scheme to defraud plaintiffs by first inducing them to invest huge sums of money into the development of the Company's property, with assurances that they would have long term leases on the Property, and then promising them that they would be fully compensated for that portion of the Property that was to be used for the construction of a bridge off-ramp, when in truth and in fact, said defendants secretly intended that plaintiffs' business would be terminated and destroyed without compensation.

98. Plaintiffs relied upon the fraudulent misrepresentations of defendants, to their substantial detriment.

99. Defendants' actions resulted in substantial financial losses to plaintiffs, including lost income, interference with business operations, and lost business opportunities which plaintiffs would have pursued but for defendants' unlawful seizure of their business and property without compensation and other racketeering activities.

100. Plaintiffs are entitled to an award of damages from defendants in an amount to be determined at trial, but in no event less than $1 billion.

## COUNT III
### (Abuse of Process)

101.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as though fully set forth herein.

102.     Defendants and their co-conspirators caused, aided and abetted, and facilitated a gross abuse of the judicial and governmental processes by improperly influencing and manipulating the Economic Court of Kyiv and the Economic Court of Appeals into reaching politically-influenced and improper decisions, declaring that the premises belonging to the Company to have been built illegally and, therefore, subject to demolition without compensation.

103.     At the time the defendants used their improper influence to obtain decisions by the two economic courts that were favorable to the defendants and which deprived plaintiffs of their property without due compensation, defendants knew, or should have known, that plaintiffs held valid long term leases on the Property and that they were lawfully operating their business on said property.

104.     As a result of defendants' gross abuse of process, plaintiffs have suffered severe financial and business damages, as well as loss of reputation, pain and suffering, emotional damages, and other damages to their health and well-being, in amounts to be determined at trial, but in no event less than $1 billion.

## JURY TRIAL DEMAND

105.     Plaintiffs demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, by and through their attorneys, demand judgment against each of the Defendants, as follows:

a.     Judgment in favor of Plaintiffs;

b.     An award of treble damages on Count I (Civil RICO);

    c.    An award of compensatory and punitive damages on Counts II and III;

    d.    An award of attorneys' fees and costs incurred in pursuing this action; and

    e.    A grant of such other and further relief as this Court deems just and proper.

Dated:  New York, New York
         June 23, 2015

**McCALLION & ASSOCIATES LLP**

_____/s/_____
Kenneth F. McCallion (Bar # KFM-1591)
100 Park Ave, 16th floor
New York, NY 10017-5538
(646) 366-0880
*Attorney for Plaintiffs*

18